FORM 3. Notice of Appeal from the United States Court of International Trade

Form 3
July 2020

## UNITED STATES COURT OF INTERNATIONAL TRADE

International Rights
Advocates

_____ , **Plaintiff,**

**v.**

**Case No.** 1:23-cv-00165-CRK

Alejandro Mayorkas,
Troy A Miller

_____ , **Defendants.**

## NOTICE OF APPEAL

Notice is hereby given that the following party/parties*  International Rights Advocates

_____

in the above-named case hereby appeal(s) to the United States Court of Appeals for
the Federal Circuit the final judgment or an order entered in this action on
08/08/2024 .

Date: 09/09/2024

Signature: _Terrence Collingsworth_

Name: Terrence Collingsworth

Address: 621 Maryland Ave. NE

Washington, DC, 20002

Phone Number: 202-543-5811

Email Address: tc@iradvocates.org

*See Fed. R. App. P. 3(c) for permissible ways of identifying appellants.

# U.S. Court of International Trade
## LIVE Database (New York)
## CIT DOCKET FOR CASE #: 1:23-cv-00165-CRK
## Internal Use Only

International Rights Advocates v. Mayorkas et al
**Assigned to:** Claire R. Kelly
**Panelists:** US Court of International Trade

**Lead Docket:**

**Jurisdiction:**
28USC § 1581(i) Residual Jurisdiction

**Category:**
Miscellaneous

**Agency:**
U.S. Customs and Border Protection

**Product Description:**

**Export Country:**
(Not Applicable)

**Plaintiff**

**International Rights Advocates**

**Defendant**

**Alejandro N. Mayorkas**
*Secretary of U.S. Department of Homeland Security*

**Date Filed:** 08/15/2023
**Jury Demand:** No

**Date Terminated:** 08/08/2024

**Date Reopened:**

**Does this action raise an issue of constitutionality?:** N

United States Court of International Trade
One Federal Plaza
New York, NY 10278

I hereby certify that this is a true copy of the original on file in this office.

Date: September 9, 2024

Clerk of the Court

By: /s/ Steve Taronji
Deputy Clerk

represented by **Terrence P. Collingsworth**
International Rights Advocates
621 Maryland Avenue, NE.
Washington, DC 20002
(202) 543-5811
Email: tc@iradvocates.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

represented by **Aimee Lee**
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
Suite 346
New York, NY 10278
(212) 264-9253
Fax: (212) 264-1916

Email: aimee.lee@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***REGISTERED CONFIDENTIAL FILER***
***Bar Status: ACTIVE***

**Chelsea Athena Reyes**
U.S. Customs and Border Protection
Office of Chief Counsel
1300 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 531-2142
Email: chelsea.reyes@cbp.dhs.gov
*ATTORNEY TO BE NOTICED*
***REGISTERED CONFIDENTIAL FILER***
***Bar Status: ACTIVE***

**Christopher A. Berridge**
U.S. Department of Justice
Commercial Litigation Branch - Civil
Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-0537
Email: christopher.berridge@usdoj.gov
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

**Justin Reinhart Miller**
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
New York, NY 10278
(212) 264-9241
Fax: (212) 264-1916
Email: Justin.R.Miller@usdoj.gov
*ATTORNEY TO BE NOTICED*
***REGISTERED CONFIDENTIAL FILER***
***Bar Status: ACTIVE***

**Marcella Powell**
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
Suite 346
New York, NY 10278
(212) 264-1873
Fax: (212) 264-1916
Email: marcella.powell@usdoj.gov
*ATTORNEY TO BE NOTICED*
***Bar Status: ACTIVE***

**Sabahat Chaudhary**

U.S. Customs and Border Protection
Office of the Chief Counsel
1300 Pennsylvania Avenue, NW.
Washington, DC 20229
(202) 257-4641
Email: sabahat.chaudhary@cbp.dhs.gov
*ATTORNEY TO BE NOTICED*
***REGISTERED CONFIDENTIAL FILER***
*Bar Status: ACTIVE*

**Defendant**

**Troy A. Miller**
*Acting Commissioner of U.S. Customs and Border Protection*

represented by

**Aimee Lee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***REGISTERED CONFIDENTIAL FILER***
*Bar Status: ACTIVE*

**Chelsea Athena Reyes**
(See above for address)
*ATTORNEY TO BE NOTICED*
***REGISTERED CONFIDENTIAL FILER***
*Bar Status: ACTIVE*

**Christopher A. Berridge**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: ACTIVE*

**Justin Reinhart Miller**
(See above for address)
*ATTORNEY TO BE NOTICED*
***REGISTERED CONFIDENTIAL FILER***
*Bar Status: ACTIVE*

**Marcella Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: ACTIVE*

**Sabahat Chaudhary**
(See above for address)
*ATTORNEY TO BE NOTICED*
***REGISTERED CONFIDENTIAL FILER***
*Bar Status: ACTIVE*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/15/2023 | 1 | **[\*\*\*NOTE: THIS DOCUMENT HAS BEEN SUPERSEDED BY DOC # 9** Summons . Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of All Plaintiffs. (Collingsworth, Terrence) Modified on 8/23/2023 (Cheevers, Casey). (Entered: 08/15/2023) |

| | | |
|---|---|---|
| 08/15/2023 | 2 | Complaint against All Defendants. Answer due by 10/16/2023. Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of All Plaintiffs. (Attachments: # 1 Exhibit A: Petition, # 2 Exhibit B: Letter to CBP, # 3 Exhibit C: Harkin Engel Protocol, # 4 Exhibit D: CBP Questionnaire, # 5 Exhibit E: Supplemental 307 Petition, # 6 Exhibit F: Letter from Acting Comm'r Miller, # 7 Exhibit G: Letter to Acting Comm'r Miller, # 8 Exhibit 2023 307 Petition)(Collingsworth, Terrence) (Entered: 08/15/2023) |
| 08/15/2023 | 3 | Form 5 Information Statement *Jurisdiction Under Section 1581(i)*. Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates. (Collingsworth, Terrence) (Entered: 08/15/2023) |
| 08/16/2023 | 4 | Form 13 Corporate Disclosure Statement . Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates. (Collingsworth, Terrence) (Entered: 08/16/2023) |
| 08/16/2023 | 5 | Motion to alter/amend/correct *Rule 3(e) Motion to Amend Summons with Amended Versions Attached* (related document(s) 1 ). Responses due by 9/6/2023. Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates. (Attachments: # 1 Errata Attachment 1: List of Specific Changes Made to Summons, # 2 Errata Attachment 2(a): Amended Summons Form for Mayorkas, # 3 Errata Attachment 2(b): Amended Summons Form for Miller, # 4 Errata Attachment 3(a): Redlined Version Showing Changes Made for Mayorkas Summons, # 5 Errata Attachment 3(b): Redlined Version Showing Chnages Made for Miller Summons)(Collingsworth, Terrence) (Entered: 08/16/2023) |
| 08/18/2023 | 6 | Form 11 Notice of Appearance . Filed by Aimee Lee of U.S. Department of Justice on behalf of United States.(Lee, Aimee) (Entered: 08/18/2023) |
| 08/22/2023 | 7 | Proposed Order *Granting Motion to Amend Summons*. Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates. (Collingsworth, Terrence) (Entered: 08/22/2023) |
| 08/23/2023 | 8 | Order entered on 8/23/2023 granting Motion to amend summons (Related Doc # 5 ). (Cheevers, Casey) (Entered: 08/23/2023) |
| 08/23/2023 | 9 | Amended Summons *deemed filed as per August 23, 2023 Order*. Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of All Plaintiffs. (Cheevers, Casey) (Entered: 08/23/2023) |
| 08/23/2023 | 10 | Order entered on 8/23/2023, assigning action to Judge Claire R. Kelly. (Taronji, Steve) (Entered: 08/23/2023) |
| 10/05/2023 | 11 | Consent Motion for extension of time until 11/6/2023 to respond complaint . Responses due by 10/26/2023. Filed by Marcella Powell of U.S. Department of Justice on behalf of All Defendants.(Powell, Marcella) (Entered: 10/05/2023) |
| 10/06/2023 | 12 | Order entered on 10/6/2023, granting consent Motion for extension of time to file answer to complaint. ORDERED that Defendants shall file their motion to dismiss Plaintiffs complaint on or before Monday, November 6, 2023; and it is further ORDERED that Plaintiff shall file its response to Defendants' motion to dismiss the complaint on or before Monday, December 18, 2023. (Related Doc # 11 ). (Taronji, Steve) (Entered: 10/06/2023) |
| 10/26/2023 | 13 | Consent Motion for extension of time until 12/15/2023 to respond complaint . Responses due by 11/16/2023. Filed by Marcella Powell of U.S. Department of Justice on behalf of All Defendants.(Powell, Marcella) (Entered: 10/26/2023) |

| 10/27/2023 | 14 | Order entered on 10/27/2023, ORDERED that the motion is granted; and it is further ORDERED that Defendants shall file their motion to dismiss Plaintiff's complaint on or before Friday, December 15, 2023; and it is further ORDERED that Plaintiff shall file its response to Defendants' motion to dismiss the complaint on or before Friday, February 23, 2024. (Related Doc # 13 ). (Taronji, Steve) (Entered: 10/27/2023) |
|---|---|---|
| 12/15/2023 | 15 | Form 11 Notice of Appearance . Filed by Christopher Berridge of U.S. Department of Justice on behalf of All Defendants.(Berridge, Christopher) (Entered: 12/15/2023) |
| 12/15/2023 | 16 | Motion to dismiss case *of Defendants*. Response to Dispositive Motion due by 2/23/2024. Filed by Aimee Lee of U.S. Department of Justice on behalf of All Defendants.(Lee, Aimee) Modified on 12/18/2023 (Taronji, Steve). (Entered: 12/15/2023) |
| 02/23/2024 | 17 | Response to Motion *to Dismiss* (related document(s) 16 ). Replies due by 3/15/2024. Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates.(Collingsworth, Terrence) (Entered: 02/23/2024) |
| 03/05/2024 | 18 | Notice of Supplemental Authority filed. . Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates. (Attachments: # 1 Exhibit Ninestar Decision)(Collingsworth, Terrence) (Entered: 03/05/2024) |
| 03/07/2024 | 19 | Motion for extension of time until 5/3/2024 to file reply brief . Responses due by 3/28/2024. Filed by Christopher Berridge of U.S. Department of Justice on behalf of Alejandro N. Mayorkas, Troy A. Miller.(Berridge, Christopher) (Entered: 03/07/2024) |
| 03/08/2024 | 20 | Order entered on 3/8/2024, granting Motion for extension of time to file reply brief. ORDERED that Defendant shall file their reply brief on or before Friday, May 3, 2024. (Related Doc # 19 ). (Taronji, Steve) (Entered: 03/08/2024) |
| 05/03/2024 | 21 | Reply *to plaintiffs opposition to motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted* (related document(s) 17 ). Filed by Christopher Berridge of U.S. Department of Justice on behalf of All Defendants. (Berridge, Christopher) (Entered: 05/03/2024) |
| 06/07/2024 | 22 | Motion for oral argument out of time on Motion to Dismiss (related document(s) 16 ). Responses due by 6/28/2024. Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates.(Collingsworth, Terrence) Modified on 6/7/2024 (Taronji, Steve). (Entered: 06/07/2024) |
| 06/10/2024 | 23 | Form 11 Notice of Appearance . Filed by Sabahat Chaudhary of U.S. Customs and Border Protection on behalf of All Defendants.(Chaudhary, Sabahat) (Entered: 06/10/2024) |
| 06/10/2024 | 24 | Order entered on 6/10/2024, ORDERED that the motion is granted; and it is further ORDERED that oral argument shall be held on Tuesday, July 16, 2024, at 11a.m. in Courtroom 1 of the United States Court of International Trade, One Federal Plaza, New York, NY. (Related Doc # 22 ). (Taronji, Steve) (Entered: 06/10/2024) |
| 06/17/2024 | 25 | Letter filed by the Honorable Claire R. Kelly concerning , *In light of Alliance For Hippocratic Medicine, the Court requests that the parties submit supplemental briefing addressing how that decision, if at all, affects Plaintiff's cause of action and Defendant's motion to dismiss. The supplemental briefs should not exceed five pages and should be submitted on or before Tuesday, July 9, 2024*. Response to Court Request/Order due by 7/9/2024. (Taronji, Steve) (Entered: 06/17/2024) |

| 07/02/2024 | 26 | Form 11 Notice of Appearance . Filed by Chelsea Athena Reyes of U.S. Customs and Border Protection on behalf of All Defendants.(Reyes, Chelsea) (Entered: 07/02/2024) |
|---|---|---|
| 07/09/2024 | 27 | Supplemental Brief *Pursuant to the Court's June 17, 2024 Letter* (related document(s) 25 ). Filed by Christopher A. Berridge of U.S. Department of Justice on behalf of All Defendants. (Berridge, Christopher) (Entered: 07/09/2024) |
| 07/09/2024 | 28 | [***NOTE: THIS DOCUMENT HAS BEEN SUPERSEDED BY DOC # 31 ***] Supplemental Brief (related document(s) 25 ). Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates. (Collingsworth, Terrence) Modified on 7/11/2024 (Almonte, Giselle). (Entered: 07/09/2024) |
| 07/11/2024 | 29 | Motion for leave to *File Corrected Brief* (related document(s) 28 ). Responses due by 8/1/2024. Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates. (Attachments: # 1 Exhibit Corrected Brief) (Collingsworth, Terrence) (Entered: 07/11/2024) |
| 07/11/2024 | 30 | Order entered on 7/11/2024 granting Consent Motion for leave to file supplemental brief. ORDERED that the corrected supplemental brief is deemed filed as of the date of this order. (Related Doc # 29 ). (Almonte, Giselle) (Entered: 07/11/2024) |
| 07/11/2024 | 31 | Supplemental Brief *deemed filed* (related document(s) 25 , 30 ). Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates. (Almonte, Giselle) (Entered: 07/11/2024) |
| 07/11/2024 | 32 | Letter filed by Honorable Claire R. Kelly concerning *Oral Argument questions*. (Almonte, Giselle) (Entered: 07/11/2024) |
| 07/16/2024 | 33 | Oral Argument held on 7/16/2024 at 11:00 AM in Courtroom 1. *Appearance Sheet attached*. (Almonte, Giselle) Modified on 7/17/2024 (Taronji, Steve). (Entered: 07/16/2024) |
| 08/08/2024 | 34 | Order entered on 8/8/2024, Slip Op. 24-91; Dismissing for lack of jurisdiction plaintiff's action to compel defendants to issue decision on allegations of cocoa imported through forced child labor from the Ivory Coast in violation of 19 U.S.C. § 1307. Judgment will enter accordingly. (related document(s) 16 , 21 , 17 ) (Attachments: # 1 Web Pages Cited, # 2 Web Pages Cited, # 3 Web Pages Cited, # 4 Web Pages Cited). (Taronji, Steve) (Entered: 08/08/2024) |
| 08/08/2024 | 35 | Order entered on 8/8/2024, Judgment for Slip Op. 24-91. ORDERED that Defendants Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security, and Troy A. Miller, Acting Commissioner of U.S. Customs and Border Protection's motion to dismiss, see ECF No. 16 , is granted; and it is further ORDERED, ADJUDGED, and DECREED that judgment be entered in favor of Defendants. (related document(s) 34 ). (Taronji, Steve) (Entered: 08/08/2024) |
| 09/09/2024 | 36 | Notice of Appeal of Slip Op. 24-91 and Judgment filed. (related document(s) 35 ). Filed by Terrence P. Collingsworth of International Rights Advocates on behalf of International Rights Advocates.(Collingsworth, Terrence) Modified on 9/9/2024 (Taronji, Steve). (Entered: 09/09/2024) |

Slip Op. 24-91

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **INTERNATIONAL RIGHTS ADVOCATES,** | |
| **Plaintiff,** | |
| v. | **Before: Claire R. Kelly, Judge** |
| **ALEJANDRO MAYORKAS, Secretary U.S. Department of Homeland Security,** | **Court No. 23-00165** |
| **TROY A. MILLER, Acting Commissioner U.S. Customs and Border Protection,** | |
| **Defendants.** | |

## <u>OPINION AND ORDER</u>

[Dismissing for lack of jurisdiction plaintiff's action to compel defendants to issue decision on allegations of cocoa imported through forced child labor from the Ivory Coast in violation of 19 U.S.C. § 1307.]

Dated: August 8, 2024

<u>Terrence P. Collingsworth</u>, International Rights Advocates, of Washington, D.C., for plaintiff International Rights Advocates.

<u>Aimee Lee</u>, Assistant Director, <u>Marcella Powell</u>, Senior Trial Counsel, and <u>Christopher A Berridge</u>, Trial Attorney, U.S. Department of Justice, of New York, N.Y. and Washington D.C., for defendants Alejandro Mayorkas, Secretary U.S. Department of Homeland Security, and Troy A. Miller, Acting Commissioner U.S. Customs and Border Protection. Also on the briefs were <u>Justin R. Miller</u>, Attorney-In-Charge, International Trade Field Office, <u>Patricia M. McCarthy</u>, Director, and <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General. Of counsel were <u>Sabahat Chaudhary</u> and <u>Chelsea A. Reyes</u>, Office of the Chief Counsel, U.S. Customs and Border Protection.

Court No. 23-00165                                                    Page 2

Kelly, Judge: Before the Court is the motion filed by Defendants Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security, and Troy A. Miller, Acting Commissioner, U.S. Customs and Border Protection ("CBP") (collectively "Defendants") seeking to dismiss the action filed by Plaintiff International Rights Advocates ("IRAdvocates") for lack of jurisdiction and failure to state a claim upon which relief can be granted. See generally Defs.' Mot. Dismiss, Dec. 15, 2023, ECF No. 16 ("Defs. Mot."); Defs.' Reply Memo. To Pl.'s Opp'n [Def. Mot.], May 3, 2024, ECF No. 21 ("Defs. Reply"). IRAdvocates opposes Defendants' motion. See generally [IRAdvocates] Opp'n [Def. Mot.], Feb. 23, 2024, ECF No. 17 ("Pl. Resp."). For the reasons that follow, Defendants' motion is granted for lack of jurisdiction.

## BACKGROUND[1]

Most of the world's cocoa comes from West African countries. Côte d'Ivoire (the "Ivory Coast") is one of, if not, the largest producing countries of cocoa in the world, responsible for a bulk share of the cocoa exported from the region that makes up seventy percent of the world's cocoa supply. See Compl. at ¶ 9, Aug. 15, 2023, ECF No. 2 (citing Elian Peltier, Ivory Coast Supplies the World With Cocoa. Now It Wants Some for Itself, N.Y. Times (Aug. 13,

---

[1] The background is drawn from the allegations contained in IRAdvocates' complaint, which are accepted as true for the purposes of evaluating Defendants' motion to dismiss. See Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1347 (Fed. Cir. 2018) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Warth v. Seldin, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party").

2022), https://www.nytimes.com/2022/08/13/world/africa/ivory-coast-chocolate.html
(last visited July 29, 2024)).  The United States receives a substantial portion of the
total cocoa produced by the Ivory Coast.  See id. (first citing Marius Wessel & P.M.
Foluke Quist-Wessel, Cocoa Production in West Africa, a Review and Analysis of
Recent Developments, 74–75 NJAS: Wageningen J. Life Sci. 1, 1–7 (2015),
https://www.tandfonline.com/doi/epdf/10.1016/j.njas.2015.09.001?needAccess=true
(last visited July 29, 2024); and then citing Vivek Voora et al., Global Market Report:
Cocoa,            Int'l         Inst.         For         Sustainable         Dev.         1
(2019) https://www.iisd.org/system/files/publications/ssi-global-market-report-
cocoa.pdf (last visited July 29, 2024)).

Forced child labor in the Ivory Coast's cocoa production is well documented and
recognized not only by humanitarian organizations and nonprofits, but also by the
courts and the U.S. chocolate companies themselves.  See, e.g., Compl. at ¶¶ 10–92
(citing sources).  Despite this recognition, leading chocolate producers continue to use
and profit from forced child labor in the Ivory Coast.  Id. at ¶ 29.

On February 14, 2020, IRAdvocates, along with the Corporate Accountability
Lab ("CAL") and the Civil Rights Litigation Clinic of University of California Irvine
School of Law ("CRLC-UCI"), submitted a joint petition (the "Petition") to CBP
seeking exclusion of cocoa produced in the Ivory Coast by means of forced or trafficked
child labor pursuant to 19 U.S.C. § 1307 and 19 C.F.R. § 12.42(b).  Id. at ¶¶ 105, 112;

Exh. A: Petition at 1–24, Feb. 14, 2020, ECF No. 2-1 ("Petition").[2]  Specifically, the

Petition alleged that certain cocoa imports from the Ivory Coast by certain chocolate

companies[3] were produced by forced child labor and requested CBP investigate and

issue a withhold release order ("WRO") on the merchandise.[4]  Petition at 1–4.  The

Petition detailed both statistical and first-hand evidence of forced and trafficked child

labor collected by IRAdvocates, as exhibited in direct accounts from IRAdvocates

investigators and victims of forced child labor in the Ivory Coast.  Id.  In March of

---

[2]  CBP's regulations include a mechanism for which a third-party may submit
allegations of products made by forced labor to CBP.  Particularly, 19 C.F.R.
§ 12.42(b) allows for:

> Any person outside CBP who has reason to believe that merchandise
> produced [in violation of 19 U.S.C. § 1307] is being, or is likely to be,
> imported into the United States may communicate his belief to any port
> director or the Commissioner of CBP.  Every such communication shall
> contain, or be accompanied by:
>> (1) A full statement of the reasons for the belief;
>> (2) A detailed description or sample of the merchandise;
>> (3) All pertinent facts obtainable as to the production of the
>> merchandise abroad.

In this case, the communication came in the form of the Petition sent directly to CBP.
See Compl. at ¶ 105; Petition at 1–24.

[3]  The chocolate companies include Nestlé, S.A. and Nestlé, U.S.A.; Cargill,
Incorporated; Barry Callebaut AG, Barry Callebaut USA LLC; Mars, Incorporated
and Mars Wrigley Confectionary; Olam International and Olam Americas, Inc.; the
Hershey Company; World's Finest Chocolate, Inc.; and Blommer Chocolate Co.
Petition at 1.

[4]  Merchandise subject to a WRO is detained by CBP, and the importer of the detained
merchandise can either re-export the detained shipments at any time or provide
information to CBP showing that the merchandise was not produced in violation of
19 U.S.C. § 1307.  See Forced Labor Frequently Asked Questions, U.S. Customs and
Border   Prot.   (May   1,   2024),   https://www.cbp.gov/trade/programs-
administration/forced-labor/frequently-asked-questions (last visited July 29, 2024).

2020, IRAdvocates and CAL met with CBP to discuss the Petition.  Compl. at ¶ 105.

At that meeting, CBP indicated that an investigation was underway, and that it had

sent requests for information to "all of the major cocoa suppliers" regarding their

supply chains.  Id.

On March 23, 2021, CBP again met with CAL to discuss the Petition.  Id. at ¶

106.  CBP claimed that an investigation into the underlying facts of the Petition was

ongoing.  Id.  At that time, CBP did not identify any insufficiency or untimeliness

with respect to the evidentiary support within the Petition.  Id.  On June 25, 2021,

IRAdvocates and CAL submitted a joint supplemental allegation to CBP concerning

the exclusion of cocoa produced in the Ivory Coast.  Id. at ¶ 107; Exh. E: Supp. 307

Petition, Jun 25, 2021, ECF No. 2-5 ("Supp. Petition").[5]  CBP met with IRAdvocates

and CAL on September 10, 2021, to discuss the supplemental petition.  Id. at ¶ 108.

Again, CBP failed to discuss the timeline or status of the pending investigation.  Id.

CBP failed to convey any new information regarding the investigation and gave no

indication as to whether it had received the requested information from cocoa

manufacturers.  Id.

---

[5]  The Supplemental Petition urged that CBP require the chocolate companies to provide, within 180 days, a "transparent map of [each] companies' supply chains down to the farm level," "pay the full Living Income Differential [] immediately, and move toward the Living Income price over the next 18 months" for the cocoa-producing farmers and their families, and "require that companies establish long-term contracts with cooperatives and farmers in [the Ivory Coast] over the next 18 months to ensure economic stability."  Supp. Petition at 2–3.

Two years after filing the initial Petition, on February 14, 2022, IRAdvocates, CAL, and CRLC-UCI authored another letter to CBP, signed by various organizations, companies, and individuals, calling on CBP to initiate a Section 1307 enforcement action on cocoa imported from the Ivory Coast based on the Petition. See id. at ¶ 109; Exh. B: Letter to CBP at 1–8, Feb. 14, 2022, ECF No. 2-2 ("Letter of Support"). CBP failed to directly respond to or otherwise answer the letter. Compl. at ¶ 111. Months later, another meeting between CAL and CBP took place on August 15, 2022, and IRAdvocates sent a follow-up email to CBP in October of 2022, requesting an update on the investigation. Id. at ¶¶ 110–111.

On December 13, 2022, CBP responded to inquiries from IRAdvocates and the co-petitioners. Id. at ¶ 111; Exh. F: Letter From Acting Comm'r Miller at 1, Dec. 13, 2022, ECF No. 2-6 ("Dec. 13, 2022, Letter"). CBP indicated that "the information submitted with the [Petition] was dated and did not provide a sufficient basis for CBP to move forward with enforcement action under 19 U.S.C. § 1307"—the first time any concern as to the quality of the information submitted by the petitioners was raised. Dec. 13, 2022, Letter at 1. CBP provided no further clarity on the status of the investigation and did not discuss when, or if, any action would be taken. See generally id. IRAdvocates and CAL were also encouraged by CBP to submit "any additional information" concerning the allegations in the Petition "should it become available." Id.

Court No. 23-00165                                                                        Page 7

IRAdvocates responded to CBP's letter on January 17, 2023, contesting CBP's determination that the information contained in the Petition and related submissions were dated.  Compl. at ¶ 112; Exh. G: Letter To Acting Comm'r Miller at 1–3, Jan. 17, 2023, ECF No. 2-7.  On February 14, 2023, CAL submitted an additional supplemental petition of ongoing forced child labor practices in cocoa production in the Ivory Coast, which remains unaddressed by CBP.  See Compl. at ¶ 113; Exh. H: 2023 307 Petition at 1–7, Jan. 14, 2023, ECF No. 2-8.  At no point in the "ongoing investigation" did CBP indicate a time frame to resolve the Petition, address the merits of the allegations, or indicate whether it was going to issue a ruling of any sort.  See Compl. at ¶¶ 105–113; Exh. G: Letter To Acting Comm'r Miller at 1–3, Jan. 17, 2023, ECF No. 2-7.

After three and a half years of unsuccessfully petitioning CBP and with no indication that CBP intended to act, IRAdvocates filed the instant action against Defendants on August 15, 2023, asserting jurisdiction under 28 U.S.C. § 1581(i) and alleging the failure to enforce the terms of Section 1307 in violation of 5 U.S.C. § 706(1).  See Compl. at ¶¶ 115–34.  Specifically, IRAdvocates asks the Court to compel CBP to act on its Petition by issuing a WRO on the cocoa products imported from the Ivory Coast, determining that the Petition lacks merit, or making "some other appropriate decision in response to the Petition."  Id. at ¶ 134, Request for Relief at ¶¶ A–B.  On December 15, 2023, Defendants moved the Court to dismiss IRAdvocates suit for lack of subject-matter jurisdiction and for failure to state a claim

Court No. 23-00165                                                    Page 8

upon which relief can be granted.  See generally Defs. Mot.  IRAdvocates opposed

Defendants' motion on February 23, 2024, to which Defendants replied on May 3,

2024.  See generally Pl. Resp.; Defs. Reply.

On June 6, 2024, the Court granted IRAdvocates' untimely request for oral

argument based on its counsel's excusable neglect.  See Order at 1–2, June 10, 2024,

ECF No. 24.  On June 17, 2024, the Court requested supplemental briefing from the

parties in light of the Supreme Court's decision in Food and Drug Administration v.

Alliance of Hippocratic Medicine.  See 602 U.S. 367, 393–96 (2024) ("Alliance"); see

also Letter of the Court, June 17, 2024, ECF No. 25.  On July 9 and 11, 2024, the

parties submitted their supplemental briefs addressing the Court's request.  See

generally Defs.' Supp. Br., July 9, 2024, ECF No. 27 ("Defs. Supp. Br."); [Pl.'s]

Corrected Supp. Br. Addressing [Letter of the Court], July 11, 2024, ECF No. 29-1

("Pl. Supp. Br.").  On July 16, 2024, the Court heard oral argument on the issues

raised by the parties in response to Defendants' motion.  See generally Oral Arg., July

16, 2024, ECF No. 33.

## STANDARD OF REVIEW

The Court reviews an action brought under 28 U.S.C. § 1581(i) under the

standards provided under Section 706 of the Administrative Procedure Act ("APA"),

as amended.  See 28 U.S.C. § 2640(e).  Under the Section 706 of the APA, the

reviewing court shall

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings and conclusions found
>       to be—
>       (A) arbitrary, capricious, an abuse of discretion, or otherwise not in
>             accordance with law

5 U.S.C. § 706(1)–(2)(A).

Whether the Court has subject-matter jurisdiction to hear an action is a "threshold" inquiry, <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94–95 (1998),[6] of which standing is a part. <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 559–60 (1992). Further, a plaintiff fails to state a claim unless, when taking the facts in the complaint as true, its claim is "plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## DISCUSSION

Defendants argue this action should be dismissed for lack of subject-matter jurisdiction because IRAdvocates lacks standing to bring its claim. Defs. Mot. at 14–20. Specifically, Defendants contend that IRAdvocates fails to satisfy Article III of the U.S. Constitution because: it cannot demonstrate a concrete, particularized injury in fact, there is no causal connection between the injury alleged and CBP's conduct, and the alleged injury is not likely to be redressed by a decision in IRAdvocates' favor.

---

[6] Subject-matter jurisdiction confers the Court with the power to hear a case and cannot be waived or forfeited. <u>United States v. Cotton</u>, 535 U.S. 625, 630 (2002). A party, or the Court on its own initiative, can object to the existence of subject-matter jurisdiction at any stage in the litigation, including after trial and entry of judgment. <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 506 (2006).

Id.; Defs. Reply at 2–11.[7]  IRAdvocates disputes Defendants' characterization of the

suit, arguing that it has organizational standing under Article III to bring the action

because it suffered an injury in fact that was fairly traceable to CBP's failure to act

that can be redressed by a favorable decision.[8]  Pl. Resp. at 9–24.  Defendants' motion

is granted because IRAdvocates lacks standing and therefore this Court lacks subject

matter jurisdiction.[9]

      Article III of the U.S. Constitution requires plaintiffs to demonstrate standing.

U.S. Const. art. III, § 2; see Lujan, 504 U.S. at 560–61. In satisfying "[t]he irreducible

constitutional minimum of standing," a plaintiff must demonstrate the three

elements of injury in fact, causation, and redressability.  Military-Veterans Advoc. v.

Sec'y of Veterans Affs., 7 F.4th 1110, 1121 (Fed. Cir. 2021); Canadian Lumber Trade

All. v. United States, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (citing Lujan, 504 U.S. at

560).  First, the plaintiff must show that it suffered an injury in fact: a concrete and

---

[7]  Concerning standing, Defendants additionally assert that the action should be dismissed because IRAdvocates lacks statutory standing, as its claims are not within the "zone of interests" of the statute that IRAdvocates seeks to enforce.  Defs. Mot. at 20–22; Defs. Reply at 11–15.  Defendants further argue that the action should be dismissed for failure to state a claim because Section 1307 does not mandate any agency action that can be compelled under the APA, and thus the Court cannot provide declaratory relief.  Defs. Mot. at 22–35.

[8]  IRAdvocates also contends its interests are protected by 19 U.S.C. § 1307 and thus satisfy the criteria for statutory standing, and further that CBP has unreasonably delayed discrete and mandatory agency action on the Petition.  Pl. Resp. at 18–40.

[9]  IRAdvocates asserts that the Court has jurisdiction under 28 U.S.C. § 1581(i)(1)(c), providing the Court with exclusive jurisdiction over civil actions commenced against the United States concerning "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety."  Compl. at ¶ 115.

particularized "invasion of a legally protected interest" that is actual or imminent rather than conjectural or hypothetical.  <u>Lujan</u>, 504 U.S. at 560; <u>Military-Veterans Advoc.</u>, 7 F.4th at 1121 ("[the injury in fact requirement] ensures that the plaintiff has a 'personal stake in the outcome of the controversy'" (quoting <u>Warth</u>, 422 U.S. at 498)).  Second, the plaintiff must demonstrate that the injury and conduct complained of are causally connected; that is, the injury is "fairly traceable to the defendant's actions or omissions," rather than those of a third party.  <u>Lujan</u>, 504 U.S. at 560. Lastly, the plaintiff must show it is likely, rather than "merely speculative," that the injury will be redressed by a decision in the plaintiff's favor.  <u>Id.</u>  An organization establishes standing by demonstrating the same three components of constitutional standing required by an individual.[10]  <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363, 379 (1982) ("<u>Havens</u>"); <u>Alliance</u>, 602 U.S. at 393–94.  To satisfy the injury in fact requirement, the organization must establish "a concrete and demonstrable injury to the organization's activities." <u>Havens</u>, 455 U.S. at 379.

In <u>Havens</u>, the Court explained that an organization sufficiently pleads an injury in fact when it identifies a concrete harm to the organization.  <u>See</u> 455 U.S. at 378–79.  In that case, Housing Opportunity Made Equal ("HOME") alleged that the defendant, Havens Realty Corporation ("Havens Realty") engaged in "racial

---

[10] An organization can establish standing in one of two ways: through organizational standing; or on behalf of its members through associational standing.  <u>See</u> <u>United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.</u>, 517 U.S. 544, 552–53 (1996).  Here, only the former is implicated.

Court No. 23-00165                                                                          Page 12

steering"—a practice preserving and encouraging racial segregation by steering members of racial and ethnic groups to buildings primarily occupied by those of similar racial and ethnic groups—in violation of Section 804 of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604.  Id. at 368–69.  HOME provided counselling services for low- and moderate-income homeseekers, as well as investigations and referral of complaints involving discriminatory housing practices.  Id.  HOME claimed that Havens Realty's actions frustrated HOME's "efforts to assist equal access to housing through counseling and other referral services," and that as a result, HOME "had to devote significant resources to identify and counteract [Havens Realty's] racially discriminatory steering practices."  Id. at 379.

    The Supreme Court, in finding that HOME had Article III organizational standing, emphasized that Havens Realty's racial steering practices "perceptibly impaired HOME's ability to provide counselling and referral services for low- and moderate-income homeseekers" and constituted a concrete harm.  Id.  HOME's counseling had directed its clients to Havens Realty, and Havens Realty lied about available housing to those clients and sabotaged the work HOME had accomplished.  Id. at 368–69.[11]  The Court stressed that the organization in Havens was not only an advocacy organization, but also operated a counseling service as a core business.  Id.

---

[11]    In Havens, the injury to HOME also caused a "consequent drain on the organization's resources" to remedy the harm caused by the defendant.  455 U.S. at 379.  However, an organization cannot "spend its way into standing simply by expending money to gather information and advocate against the defendant's action." Alliance, 602 U.S. at 394.

Court No. 23-00165                                                    Page 13

at 368.  Thus, HOME's core business extended beyond advocacy.  See id. at 368, 378–

79.  At issue was an asset with value—stemming from HOME's core business—rather

than an abstract societal interest; Havens Realty's actions damaged that asset.[12]  See

id. at 379.  In sum, Havens found injury in fact because the defendant's action harmed

the plaintiff's asset.  See id. (finding a perceptible injury to HOME's ability to "provide

counseling and referral services").

    Recently, in Alliance the Supreme Court applied Havens' rationale in the

context of regulatory action.  See Alliance, 602 U.S. 367.  The plaintiff-organizations

in Alliance challenged the Food and Drug Administration's ("FDA") approval of the

drug mifepristone, used to terminate pregnancies up to ten weeks.  Id. at 375–377.

The organizations argued that the FDA's approval of mifepristone had "forced" them

to "expend considerable time, energy and resources," engaging in public advocacy,

conducting independent studies, and drafting civil actions, all of which constituted a

concrete and particularized injury in fact.  Id. at 394.  The Court rejected the

organizations' proposition that their claimed injury amounted to the same type of

injury suffered by HOME in Havens.  To the contrary, the FDA's approval of

_____

[12] Indeed, an injury that is "merely ideological" fails to satisfy first element of standing.  Alliance, 602 U.S. at 381.  Allowing alleged damages to the "special interests" of an organization to suffice would result in "no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization, however small or short-lived."  Military-Veterans Advoc., 7 F.4th at 1129 (quoting Sierra Club, 405 U.S. at 739); see also Alliance, 602 U.S. at 382 ("The injury in fact requirement prevents the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders" (internal quotations and citations omitted)).

mifepristone did not obstruct a core business or "impose[] any similar impediment" to the organizations' mission. Id. at 395.

Inquiries into the second and third constitutional standing requirements—causation or traceability and redressability, respectively—often overlap. Alliance, 602 U.S. at 380–81 ("The second and third standing requirements—causation and redressability—are often flip sides of the same coin" (internal quotations and citations omitted)). The causation prong "examines the causal connection between the assertedly unlawful conduct and the alleged injury." Allen, 468 U.S. at 754 n.19. When government regulation of a third-party individual or business is purported to be the cause of injury to an unregulated plaintiff, that plaintiff must demonstrate a "predictable chain of events" stemming from the government action (or inaction) to the claimed injury. Alliance, 602 U.S. at 385 ("in other words, [the plaintiff must show] that the government action has caused or likely will cause injury in fact to the plaintiff"). The redressability prong "examines the causal connection between the alleged injury and the judicial relief requested." Allen, 468 U.S. at 754 n.19; see also McKinney v. U.S. Dep't of Treasury, 799 F.2d 1544, 1549–50 (Fed. Cir. 1986) (explaining that the injury caused by the defendant's actions must be "likely to be redressed should the court grant the relief requested").

Here, IRAdvocates has not met the requirements of organizational standing under Article III. The organization "advocates for and with working people around the world"—including those in the Ivory Coast—and is "committed to overcoming the

problems of child labor, forced labor, and other abusive practices in the global economy." Pl. Resp. at 10; Compl. at ¶ 117. It seeks to achieve its mission by promoting the enforcement of international labor rights through "public education and mobilization, research, litigation, legislation, and collaboration with labor, government and business groups." Pl. Resp. at 10; Compl. at ¶ 117. But unlike the plaintiff in Havens, IRAdvocates does not identify how CBP's failure to act has harmed a core business or diminished any asset. See 455 U.S. at 368–69.

In contrast to Havens, IRAdvocates' claimed injury rests not on harm to a core business, but solely on CBP's failure to issue a WRO for cocoa imported from the Ivory Coast or to otherwise take action in response to the Petition. See Pl. Resp. at 11. Similar to Alliance, IRAdvocates would prefer specific action by CBP. Like the organizations in Alliance, IRAdvocates has devoted resources to persuading the agency to act in accordance with its wishes. See Compl. at ¶¶ 105–114; Pl. Mot. at 10–17; Pl. Supp. Br. at 3–5. Such expenses do not constitute injury in fact.[13] See

---

[13] Moreover, IRAdvocates has not shown that its mission has been inhibited. See Vilsack, 808 F.3d at 919. Nothing in the filings indicate that IRAdvocates cannot continue its pursuit of achieving "just and humane treatment for workers worldwide," or that it now must spend resources in a capacity independent from its issue-advocacy functions to counteract harm that CBP has caused. To the contrary, the complaint highlights that IRAdvocates remains active in advocating for and litigating cases relating to its mission statement after submitting the Petition, such as in the Courts of Appeals for the Ninth Circuit and the D.C. Circuit, and the Supreme Court of the United States. See, e.g., Compl. at ¶ 96 (describing a film highlighting IRAdvocates' work in the Ivory Coast that was released in 2022); Nestle USA, Inc. v. Doe, 593 U.S. 628 (2021) (issuing decision on June 17, 2021); Coubaly v. Cargill, Inc., 610 F. Supp. 3d 173 (D.D.C. 2022) (issuing decision June 28, 2022, appeal filed July 25, 2022).

Alliance, 602 U.S. at 394 ("an organization that has not suffered a concrete injury

caused by a defendant's action cannot spend its way into standing simply by

expending money to gather information and advocate against the defendant's

action").[14] IRAdvocates' frustration with the regulatory process fails, without more,

to satisfy the injury in fact requirement because regulatory frustration is not injury

in fact. See Alliance, 602 U.S. at 396 (noting plaintiffs must show "regulatory

requirements likely would cause them to suffer an injury in fact"). Indeed, the federal

courts are inappropriate forums for an organization to challenge a federal agency's

actions based on that organization's mere ideological objection to the agency's choices.

Id. at 396–97.

IRAdvocates' claim that it was injured by CBP's failure to act on the Petition

after it was filed is also unavailing. See Pl. Resp. at 13; Pl. Supp. Br. at 3–5.

IRAdvocates argues that the expenses it incurred as a result of CBP's delay caused

---

[14] IRAdvocates claims that CBP's failure to take action on the Petition poses "a direct conflict between [CBP's] conduct and [IRAdvocates'] mission." Pl. Resp. at 10–11. In support of its position, IRAdvocates cites Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 133 (D.C. Cir. 2006). However, that case is distinguishable. Similar to Havens, the plaintiff-organization in Abigail Alliance offered counseling and educational services to assist terminally ill patients in "accessing potentially life-saving drugs." Id. at 132–33. The FDA's challenged regulations, which barred the organization's clients from accessing clinical trials for experimental drugs, were found to perceptibly impair and be in direct conflict with the organization's counseling services, thus conferring constitutional standing. Id. at 133. The court specifically found that the organization's injury was "directly attributable to FDA policies." Id. Here, CBP's inaction is not of the same nature as the FDA's in that case, as IRAdvocates does not challenge any regulations that CBP promulgated. Moreover, and discussed below, IRAdvocates' cannot establish that the alleged injury is "directly attributable" to CBP's inaction.

the organization to "divert substantial additional resources to convince CBP to take enforcement action."  Pl. Mot. at 13–14; <u>see also</u> Pl. Supp. Br. at 4–5.  Specifically, IRAdvocates claims diversions of resources towards: additional resources to prepare for and participate in the March 23, 2021, September 10, 2021, and August 15, 2022, meetings at CBP's office; collecting additional evidence of trafficking and forced labor in the Ivorian cocoa industry included in the supplemental petition filed on June 25, 2021, consisting of three trips to Western Africa visiting five regions in the Ivory Coast in 2020 to interview and observe children subject to forced labor; preparing reports, summaries of interview, affidavits, descriptions of photos, and transcripts of video and audio recording for use in information submitted in the supplemental petition; organizing and filing the February 14, 2022, letter of support to CBP; preparing the January 17, 2023, response letter to CBP's December 13, 2022, letter; and conducting additional research and obtaining new evidence to assist the creation of CAL's unanswered supplemental petition filed on February 14, 2023.  <u>See</u> <u>id.</u>; Compl. at ¶¶ 106–110, 112–13; Letter of Support; Dec. 13, 2022, Letter.[15]

---

[15] In further support of its claimed injury in fact, IRAdvocates argues that "[o]nly organizations like IRAdvocates that have filed a lawful [Section 1307] petition and then expended funds in an effort to get CBP to take statutorily required action to enforce the law have standing to challenge CBP's inaction."  Pl. Supp. Br. at 3 (emphasis omitted).  However, the act of filing a petition does not legally bind CBP to take a particular enforcement pathway.  Rather, enforcement action is warranted only after CBP has evaluated and determined the merits of the allegations in the Petition.  <u>See</u> 19 C.F.R. § 12.42(e), (f).

      IRAdvocates' post-Petition expenditures fall squarely within the category of resources used for advocacy, litigation, or educational purposes—the types of expenses that have been consistently rejected as a basis for Article III injury in fact. See, e.g., Alliance, 602 U.S. at 394 ("But an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action").  Rather than relating to a business activity independent from its issue-advocacy functions, the expenditures appear to directly further IRAdvocates' claimed goal of "public education and mobilization, research, litigation, legislation, and collaboration with labor, government and business groups." See Compl. at ¶ 117. IRAdvocates cannot "spend its way into standing" by expending resources to gather information and advocate against forced-child labor in the Ivory Coast, be that at the outset of advocacy activities or in the middle.  See Alliance, 602 U.S. at 394. Accordingly, IRAdvocates fails to demonstrate that it suffered any injury in fact as required to assume organizational standing under Article III.[16]

---

[16] Concerning the three trips to Western Africa, it would appear that these expenses similarly occurred within IRAdvocates' normally expended operational costs and insufficient to constitute injury in fact. See Vilsack, 808 F.3d at 920.  The complaint details IRAdvocates' past travels to and work in the region, listing trips to the Ivory Coast in 2018 and 2019.  Compl. at ¶¶ 99–100.  In light of these excursions in the previous two years, attributing the 2020 trips solely to CBP's inaction is tenuous, at best, given the release of the 2022 film documenting IRAdvocates' work in the Ivory Coast and the filing of the Coubaly lawsuit in the U.S. District Court for the District of Columbia in 2021.  See Compl. at ¶¶ 96, 103; see also Coubaly, 610 F. Supp. 3d 173.

Even if IRAdvocates had suffered an injury in fact, the injury is not traceable to CBP's inaction, and a decision in IRAdvocates' favor would not likely redress the injury. See Lujan, 504 U.S. at 560. As discussed, IRAdvocates' expenses resulted from CBP's inaction relate to those made in the routine operations of an organization seeking "to achiev[e] just and humane treatment for workers worldwide." Pl. Resp. at 10; see also Compl. at ¶ 117. Moreover, even if the Court compelled CBP to act, the agency might conclude that the Petition is without merit and refuse to impose Section 1307 exclusions on cocoa from the Ivory Coast—a possibility recognized in both IRAdvocates' complaint and brief. Compl. at ¶ 134; Pl. Resp. at 26–27.

Alternatively, a judgment in IRAdvocates' favor that compels CBP to issue a WRO would merely halt import of cocoa coming from the Ivory Coast—an outcome that fails to pass constitutional muster. See Alliance, 602 U.S. at 385 (clarifying that the causation element requires the plaintiff to "show a predictable chain of events leading from the government action to the asserted injury"); Lujan, 504 U.S. at 560–61 ("it must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision" (internal quotations and citations omitted)). There is no guarantee that action from CBP will immediately, or even eventually, put an end to forced child labor in the Ivory Coast. CBP's interference with IRAdvocates' mission "to fight to prevent the exploitation of forced child labor in cocoa harvesting" using all available avenues, including Section 1307, see Pl. Supp. Br. at 5, is therefore an impermissibly attenuated and speculative basis to confer constitutional standing

Court No. 23-00165                                                                    Page 20

under both the causation and redressability prongs of the analysis.  See Alliance, 602

U.S. at 385; Lujan, 504 U.S. at 560–61.  Thus, IRAdvocates has failed to show the

causation and redressability elements of Article III standing.

Given that IRAdvocates does not have constitutional standing to bring its

claim, the Court need not reach the remaining arguments made by the parties.  CBP's

motion to dismiss for lack of subject-matter jurisdiction is therefore granted.

## CONCLUSION

IRAdvocates lacks standing to bring action against CBP to compel 19 U.S.C.

§ 1307 enforcement on cocoa imported from the Ivory Coast.  Therefore, Defendants'

motion to dismiss is granted, and IRAdvocates complaint is dismissed for lack of

subject-matter jurisdiction.  Judgment will enter accordingly.


                                          /s/ Claire R. Kelly
                                          Claire R. Kelly, Judge


Dated:        August 8, 2024
              New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **INTERNATIONAL RIGHTS ADVOCATES,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**ALEJANDRO MAYORKAS, Secretary U.S. Department of Homeland Security,**<br><br>**TROY A. MILLER, Acting Commissioner U.S. Customs and Border Protection,**<br><br>    **Defendants.** | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 23-00165** |

## <u>JUDGMENT</u>

This case, having been duly submitted for decision, and the Court after due deliberation, having rendered its opinion, and now in conformity with that opinion, it is

**ORDERED** that Defendants Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security, and Troy A. Miller, Acting Commissioner of U.S. Customs and Border Protection's motion to dismiss, <u>see</u> ECF No. 16, is granted; and it is further

**ORDERED, ADJUDGED, and DECREED** that judgment be entered in favor of Defendants.

    /s/ Claire R. Kelly
    Claire R. Kelly, Judge

Dated:    August 8, 2024
          New York, New York