# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

INTERNATIONAL RIGHTS ADVOCATES
Plaintiff-Appellant,

v.

KRISTI NOEM, Secretary of Homeland Security,
PETE R. FLORES, Acting Commissioner for U.S. Customs and Border Protection,
Defendants-Appellees

_____

On Appeal from the United States Court of
International Trade, Case No. 23-00165
Honorable Claire R. Kelly

_____

## REPLY BRIEF FOR PLAINTIFF-APPELLANT
_____

Terrence P. Collingsworth
(D.C. Bar No. 471830)
Executive Director
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue NE
Washington, D.C. 20002
Phone: (202) 543-5811
Email: tc@iradvocates.org

*Counsel for Plaintiff-Appellant*
*International Rights Advocates*

# TABLE OF CONTENTS

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1**

**II.   ARGUMENT ............................................................................................ 4**

A. IRADVOCATES SUFFERED AN "INJURY-IN-FACT." ........................................ 6

   1.  CBP's Failure to Enforce Section 307 Caused Injury to IRAdvocates by Depriving It of an Important Tool to Achieve Its Core Mission of Ending Forced Child Labor in Cocoa Harvesting ..................................................... 6

   2.  IRAdvocates Suffered a Concrete Injury When It Was Required to Drain Its Resources to Confront CBP's Unlawful Failure to Enforce Section 307. .............................................................................................. 10

B. IRADVOCATES' INJURY WAS CAUSED BY CBP'S FAILURE TO ACT ON THE PETITION AS REQUIRED BY SECTION 307 .......................................... 19

C. IRADVOCATES' INJURIES WOULD BE REDRESSED BY THE CIT'S ORDER FOR CBP TO ENFORCE SECTION 307. .................................................... 21

**III.  CONCLUSION ..................................................................................... 24**

<u>TABLE OF AUTHORITIES</u>

**CASES**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006) ...................................................................................10

*Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165 (9th Cir. 2024).........15, 16, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................4

*Attias v. CareFirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) ...............................5, 7, 19

*Doe v. Apple, Inc.*, 96 F.4th 403 (D.C. Cir. 2024) ........................................5, 7, 19

*Fair Hous. Ctr. Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990 (6th Cir. 2025) ........................................................................................15, 18

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024).................................*passim*

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .................................*passim*

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).......................................22

*Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992) .....................................................21

*Nat'l Treasury Emps. Union v. United States*, 101 F.2d 1423 (D.C. Cir. 1996).....10

*Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888 (6th Cir. 2024)...........................18

*Wanxiang Am. Corp. v. United States*, 12 F.4th 1369 (Fed. Cir. 2021)....................4

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................*passim*

**STATUTES AND REGULATIONS**

19 U.S.C. § 1307 ...........................................................................................*passim*

5 U.S.C. § 555 .......................................................................................................23

5 U.S.C. § 706 ........................................................................................2, 5, 7, 23

19 C.F.R. § 12.42 ..........................................................................................*passim*

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff-Appellant International Rights Advocates ("IRAdvocates") submits this Brief in Reply to Defendants-Appellees' Response Brief ("DA Br."), which is premised on a significant mischaracterization of IRAdvocates' case. IRAdvocates brought the underlying action against Defendants-Appellees "for their failure to take *any of the actions* required by the Tariff Act of 1930, 19 U.S.C. § 1307" ("Section 307"). *See* Appx22 (Complaint ¶ 1) (emphasis added). However, Defendants-Appellees state the issue on appeal as:

> whether IRAdvocates possesses organizational standing to compel the United States, specifically, U.S. Customs and Border Protection (CBP), *to take affirmative enforcement action by imposing a withhold release order* (WRO) against all cocoa and cocoa products from Côte d'Ivoire sought to be imported into the United States.

DA Br. at 2 (emphasis added); *see also id*. at 8, 24 (repeating the same mischaracterization of the case).

The mischaracterization is significant because it is likely that no organization has standing to sue to require CBP or any other government agency to *reach a specific decision* under its statutory mandate. Here, IRAdvocates did *not* seek a judicial order that CBP issue a WRO to ban the importation of cocoa from Côte d'Ivoire. Rather, IRAdvocates sought an order from the CIT that CBP merely *make a decision* regarding IRAdvocates' lawful Petition[1] filed under Section 307:

---

[1] It is important to stress that, as the CIT acknowledged, CBP did not indicate to IRAdvocates that there was any issue with the timeliness or quality of evidence in

1

Plaintiff requests that this Court . . . [d]eclare that the failure and refusal of the defendants Secretary of Homeland Security and Acting Commissioner of CBP to issue a decision in response to the February 14, 2020 Petition violates Section 706(1) of the Administrative Procedure Act. These agencies have a statutory duty to make a decision within the scope of their statutory authority. They do not have the power to simply ignore a federal law passed by Congress . . . .

Appx89 (Complaint ¶ V.B).

IRAdvocates brought this case because CBP ignored its statutory duty to act on the Petition IRAdvocates filed under Section 307. This unlawful inaction effectively nullified the mandatory requirement established by Congress that CBP "shall" act on such Petitions. On appeal, CBP ignores this foundational issue and merely walks through the routinized steps of standing, but below, CBP took the astounding position that it had complete discretion as to whether to take any action at all on any Petition filed. CBP further argued there is no mandatory action or time frame required by Section 307 and the implementing regulations. *See* ECF No. 16, at 3-4, 18, 22-29. According to CBP, Section 307 is merely optional and does not bind CBP to take any action at all.

CBP's position that it alone decides whether and when to enforce Section 307, an Act of Congress, is inextricably linked to the standing issues in this case.

---

the Petition. Appx5 (Decision at 5). CBP was required by 19 C.F.R. § 12.42(c) to either notify IRAdvocates of any defects in the Petition or forward it to the CBP Commissioner "*within 10 days*" (emphasis added). Thus, CBP did not fail to act on the Petition due to any defect in the substance of the Petition.

As an initial matter, CBP ignores that in assessing standing, the merits of the underlying claim must be assumed. *See* Plaintiff-Appellant's Opening Brief ("Op. Br.") at 17-18, 22-23. CBP's failure to even address this fundamental issue on appeal is decisive.

If the merits are properly assumed, then as IRAdvocates alleged, Section 307 is a mandatory statute that CBP is required to enforce. *See* Op. Br. at 21-23. When CBP failed to do so, taking the position that enforcing Section 307 was completely discretionary, IRAdvocates suffered an injury-in-fact because CBP denied to IRAdvocates a crucial tool in fulfilling its mission to end forced child labor in cocoa harvesting. Further, when it was clear that CBP was unlawfully failing to take action on IRAdvocates' Petition, IRAdvocates suffered the additional injury-in-fact of expending its limited resources in an effort to gather new evidence of forced child labor at the specific request of CBP so that the agency would take action. Both of these injuries are cognizable under current law, and CBP's constricted reading of the cases does not support finding that IRAdvocates did not suffer an injury.

Further, as IRAdvocates demonstrated, there is no question that its injuries are fairly traceable to or caused by CBP's failure to act. *See* Op. Br. at 43-45. Likewise, if the CIT had ordered CBP to act under Section 307, IRAdvocates' injury would have been redressed. *See* Op. Br. at 45-54. CBP fails to address the

specifics of IRAdvocates' arguments in this regard and its abstract assertions of the law do not rebut IRAdvocates' specific satisfaction of these elements for standing.

## II.    ARGUMENT

### CBP Fails to Establish that IRAdvocates Lacks Article III Standing to Sue CBP for Failing to Enforce Section 307

CBP's standing argument merely recites out of context snippets from *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) and *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), establishing the undisputed—and, in this case, irrelevant—position that abstract advocacy interests are not sufficient to support an injury-in-fact. *See* DA Br. at 10-15. CBP fails to address the specific and unique arguments made by IRAdvocates to support organizational standing. Proper application of *Havens*, *Alliance*, and other key standing cases compels the conclusion that IRAdvocates has standing to sue. Crucial to this analysis is that CBP ignores completely the fundamental pleading rules established in this Court and the Supreme Court that in assessing a motion to dismiss, the allegations of IRAdvocates' Complaint must be taken as true, and all reasonable inferences must be drawn in favor of the allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1373 (Fed. Cir. 2021).

Further, in assessing the standing issue, CBP ignores that the Court must assume the merits of IRAdvocates' core claim – *i.e.*, that Section 307 created a

mandatory duty for CBP to act on IRAdvocates' legitimate Petition. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975) (assuming validity of legal theory for purposes of standing analysis). "When assessing standing at the pleading stage, we assume that the plaintiffs' view of the statute is correct and that they will be successful on the merits of their claim." *Doe v. Apple, Inc.*, 96 F.4th 403, 409-10 (D.C. Cir. 2024); *see also Attias v. CareFirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017).

Assuming the merits, CBP's failure to act on IRAdvocates' Petition for over three and a half years was unreasonable delay under Section 706(1) of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(1). CBP's failure to act on the Petition injured IRAdvocates by depriving it of a powerful tool to fight child slavery and, through the agency's unreasonable delay, caused IRAdvocates to expend time and resources to gather new evidence of forced labor based on CBP's assertion that the evidence in the original petition was too old to act upon. The injuries suffered by IRAdvocates were caused exclusively by CBP's unlawful failure to act on IRAdvocates' Petition. Further, an order for CBP to enforce Section 307 would have obtained for IRAdvocates the precise relief it sought in the Complaint, establishing redressability.

**A. IRAdvocates Suffered an "Injury-In-Fact."**

    **1. CBP's Failure to Enforce Section 307 Caused Injury to IRAdvocates by Depriving It of an Important Tool to Achieve Its Core Mission of Ending Forced Child Labor in Cocoa Harvesting.**

CBP's repetitive mantra that abstract advocacy interests are not sufficient to establish an injury-in-fact ignores IRAdvocates' actual argument. *See* DA Br. at 10-15. IRAdvocates does not dispute that advocacy interests alone are not sufficient for standing. But, notwithstanding CBP's improper effort to dispute facts in the context of a motion to dismiss and reduce IRAdvocates to a mere advocacy organization, *see id*. at 10-11, the record is clear that "IRAdvocates promotes enforcement of labor rights internationally through public education and mobilization, research, ***litigation***, [and] legislation . . . ." Appx85 (Complaint ¶ 117) (emphasis added). IRAdvocates' strategy to end child slavery in cocoa harvesting has focused primarily on action, not advocacy, and litigation against specific companies involved in child slavery has been the major strategic approach. Appx75-81 (Complaint ¶¶ 93-104); Op. Br. at 20-21 (summarizing IRAdvocates' litigation efforts to end child slavery in cocoa harvesting).

Using the Section 307 petitioning process to ban the importation by specific chocolate companies of cocoa harvested by child slaves is one of the key litigation tools IRAdvocates has employed in its battle to stop major chocolate companies from profiting from child slavery. *See* Appx81-84 (Complaint ¶¶ 105-114). Indeed,

because the other legal avenues to address child slavery in cocoa harvesting have been largely foreclosed or limited, *see* Appx75-76, Appx80 (Complaint ¶¶ 94, 103),[2] this leaves Section 307 as the one of the most significant remaining legal tools available to IRAdvocates to end child slavery in cocoa harvesting.

CBP not only fails to address the argument that depriving IRAdvocates of a major tool in its fight to end child slavery in cocoa harvesting is a cognizable injury-in-fact, but it also ignores that the merits of IRAdvocates' underlying claim must be assumed in assessing standing. *See, e.g.*, *Warth*, 422 U.S. at 501-02; *Apple,* 96 F.4th at 409-10; *Attias*, 865 F.3d at 629. The key merits issue in this case is IRAdvocates' claim under Section 706(1) of the APA that CBP's failure to act on the Petition for three years and five months after submission was "unreasonable delay" because CBP is ***required*** to take prompt action under Section 307 to decide whether to ban the importation of cocoa harvested with forced child labor. Appx87-89 (Complaint ¶¶ 123-34); Op. Br. at 22-23. Section 307 is made mandatory by, among other things, the language that cocoa harvested by forced child labor "***shall not*** be entitled to entry at any of the ports of the United States." *See* ECF No. 17 (Opp. MTD), at 24-32 (detailing CBP's statutory and regulatory

---

[2] The CIT accepted CBP's position that because there were other avenues to battle child slavery, CBP's failure to enforce Section 307 did not impair IRAdvocates' organizational mission. *See* Appx15 (Decision at 15, n.13). Even if there were other effective litigation options, this would not negate that depriving IRAdvocates of Section 307 significantly impaired its mission.

violations in failing to act on IRAdvocates' Petition); *see also* Appx87-89

(Complaint ¶¶ 123-34). IRAdvocates thus asserted as its primary claim on the

merits that CBP had no discretion to decline to act on its Petition. Under its own

regulations, CBP was obligated to determine whether information in the Petition

"reasonably but not conclusively indicates" that the imports were made with child

labor. 19 CFR § 12.42(e). It could not simply ignore the Petition.

CBP's failure to act impaired IRAdvocates' institutional objective of using

available legal mechanisms to fight child slavery, including through the mandatory

statutory scheme that requires CBP to act on petitions that meet the requirements

of Section 307 and its implementing regulations.[3] CBP's strong reliance on the

*Havens* holding requiring more than an abstract advocacy interest, *see* DA Br. at

10-15, does not refute IRAdvocates' assertion of serious injury from CBP's

deprivation of Section 307 as a crucial tool in IRAdvocates' fight to end child

slavery.

In *Havens*, HOME, an organization dedicated "to mak[ing] equal

opportunity in housing a reality in the Richmond Metropolitan Area," sued Havens

Realty for racial steering in violation of Section 804 of the Fair Housing Act of

---

[3] There is no question that IRAdvocates' Petition satisfied all of the requirements. *See supra* note 1. Further, as noted at pages 1-2, *supra*, IRAdvocates was ***not*** arguing that CBP must find its Petition meritorious. Rather, IRAdvocates' claim was CBP must issue a decision in response to the Petition and was not free to ignore it, as it did.

1968 ("FHA"). 455 U.S. at 363, 368. The Court found that HOME had standing

because Havens Realty's illegal racial steering practices impaired HOME's core

mission: "If . . . petitioners' steering practices have perceptibly impaired HOME's

ability to provide counseling and referral services . . . there can be no question that

the organization has suffered injury in fact." *Id.* at 379.

Here, CBP's unlawful failure to act on a statutory mandate was much more

harmful to IRAdvocates than a single violator of the FHA, Havens Realty, was to

HOME's mission. The equivalent to this case would have been if the Office of Fair

Housing and Equal Opportunity ("FHEO") refused to enforce the FHA, thereby

allowing Havens Realty, and all others implementing discriminatory racial steering

practices, to deprive HOME's clients of their statutory protection against racial

discrimination. HOME certainly would have had standing to sue to obtain the

FHEO's enforcement of the FHA. *See* Op. Br. at 24-26 (discussing cases ordering

federal agencies to enforce their empowering statutes).

CBP fails to address IRAdvocates' specific argument that its core

institutional mission was harmed by CBP's assertion that Section 307 required it to

do nothing in response to IRAdvocates' Petition, thus depriving IRAdvocates of an

important tool to fight child slavery. IRAdvocates has cited several authorities

providing unrefuted support for its position that CBP injured IRAdvocates by

ignoring its statutory duty to enforce Section 307. Op. Br. at 24-27. CBP's failure

to treat Section 307 as a mandatory requirement for CBP to decide the merits of IRAdvocates' Petition, which, assuming the merits of IRAdvocates' Complaint, CBP must do, creates "a direct conflict between the defendant's conduct and the organization's mission." *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (citing *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996)).

## 2. IRAdvocates Suffered a Concrete Injury When It Was Required to Drain Its Resources to Confront CBP's Unlawful Failure to Enforce Section 307.

IRAdvocates established that the funds it was forced to expend to require CBP to perform its statutory duty and enforce Section 307 were directly comparable to the situation in *Havens* in which the Plaintiff, HOME, expended funds to counter the unlawful activity of Havens Realty. *See* 455 U.S. at 379. Assuming the merits of IRAdvocates' legal claim, as is required, *see, e.g.*, *Warth*, 422 U.S. at 501-02, CBP had a mandatory obligation to take action under Section 307 following IRAdvocates' filing of the Petition. When CBP unreasonably delayed taking action to enforce the law, and told IRAdvocates that it needed to gather additional evidence of forced labor because the original evidence has become "dated," IRAdvocates was forced to expend additional resources to require CBP to perform its statutory duty and enforce Section 307. *See* Op. Br. at 31-33, 34-36, 40-43.

CBP's sole argument attempts to equate the general abstract advocacy by the physician groups and other associations in *Alliance* with the concrete efforts by IRAdvocates to obtain enforcement of Section 307. DA Br. at 15-17. The groups in *Alliance* disagreed with the FDA's position on the hot button issue of access to mifepristone and, without a statutory basis to contest the FDA's ***lawful*** action, the groups expended resources for a general advocacy campaign in an effort to influence public opinion on the issue and persuade the FDA to alter its position. *Alliance*, 602 U.S. at 393-94. This voluntary campaign funded by the groups provoked the oft-cited line by the *Alliance* Court that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *Id*. at 394.

But crucially, the *Alliance* Court distinguished and reinforced the holding in *Havens*, noting that HOME was countering Havens Realty's unlawful activity in providing false information to HOME's clients:

> Critically, HOME not only was an issue-advocacy organization, but also operated a housing counseling service. . . . And when Havens gave HOME's employees false information about apartment availability, HOME sued Havens because Havens "perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers."

*Id*. at 395 (quoting *Havens*, 455 U.S. at 379).

Most significant to this case, the *Alliance* Court contrasted the facts there with the illegal conduct by Havens Realty and observed "the associations have not suggested that federal law requires FDA to disseminate [safety] information upon request by members of the public." *Id*. at 395-96. In other words, the medical associations in *Alliance* could not identify any failure by the FDA to comply with any statutory requirement regarding access to mifepristone, so they were left with public advocacy to express their disagreement with the FDA's lawful action. *See id.* at 394–96.

Here, again, assuming the merits of IRAdvocates' claim in assessing standing, CBP's failure to take mandatory action in response to IRAdvocates' Petition was unlawful as it does not have the authority to convert Section 307's mandatory provisions to an entirely discretionary statutory scheme. *See* Op. Br. at 17-18, 21-24. To be clear, IRAdvocates is not arguing that the funds expended in ***filing*** the Petition constitute the requisite draining of resources required by *Havens*, as is suggested by CBP. *See* DA Br. at 19-20. Filing the Petition seeking to ban the importation of cocoa harvested by child slaves was integral to IRAdvocates' core organizational mission. However, as in *Havens*, when CBP failed to take mandatory action in response to the Petition, IRAdvocates was then required to expend significant ***additional*** time and resources to counter CBP's unlawful action that interfered with IRAdvocates' core mission of using litigation to end child

slavery. *See* Op. Br. at 31-33 (listing costly steps IRAdvocates took in an effort to pressure CBP to take legally required action in response to IRAdvocates' Petition).

As IRAdvocates alleged, and which must be taken as true, there is no question IRAdvocates would not have had to expend any of these additional resources if CBP had not unreasonably withheld and delayed action based on IRAdvocates' original Petition. *See* Appx82-84 (Complaint ¶¶ 106-114). Notwithstanding improper speculation by CBP and the CIT, these expenditures were made exclusively to pressure CBP to take required action under Section 307. *See* Op. Br. at 31-36. CBP's unlawful failure to act and unreasonable delay – coupled with the agency's statements that the evidence of forced labor in the original petitions was "dated" – caused IRAdvocates to divert resources that could have been directed towards ending other serious human rights violations in the global economy, the core of IRAdvocates' organizational mission. *See, e.g.*, Appx32-33, 40, 75-81, 85-86 (Complaint ¶¶ 17-18, 29, 93-104, 117, 119).

In another parallel to *Havens*, where HOME was forced to spend funds to counter false information provided to HOME's clients by Havens Realty, 455 U.S. at 368–69, 379, here CBP made false or misleading claims about its commitment to enforcing Section 307 in response to meritorious petitions. *See* Op. Br. at 39-42. If CBP had been honest upon receiving IRAdvocates' Petition and disclosed that it viewed Section 307 as purely discretionary and that it was not going to act in the

cocoa sector no matter how much compelling evidence of forced child labor IRAdvocates gathered and presented, then IRAdvocates would not have spent enormous time and resources gathering new evidence and taking other actions to encourage CBP to perform its statutory duty.

The *Alliance* Court characterized the false information provided to HOME's clients as "defective goods" that required resource expenditures to correct. 602 U.S. at 395. Here, too, CBP led IRAdvocates to believe that its program to enforce Section 307 was legitimate and worth the time and costs to pursue, when in fact CBP was operating in bad faith with respect to the IRAdvocates' Petition and never had any intention of taking any action under Section 307. *See* Op. Br. at 39-42. The time and resources IRAdvocates spent on trying to persuade CBP to perform its statutory duty, when CBP had no intention of doing so, constitute a cognizable injury based on the *Havens* rationale.

Rather than helping to eradicate child slavery in global supply chains, IRAdvocates' lawful and legitimate Petition was wasting away in legal limbo while IRAdvocates was doing everything possible to require CBP to take the mandatory action required by Section 307. Drawing again on the analogy on page 9, *supra*, suppose that the FHEO refused to enforce the FHA, allowing Havens Realty to engage in racial steering, and as a result, HOME had to expend resources to compel the FHEO to perform its statutory duty. There should be no question that

14

if the Supreme Court found concrete injury when HOME expended resources to force a single violator of the FHA, Havens Realty, to comply with the law, the Court would also find a concrete injury if HOME were forced to more broadly counteract the FHEO's unlawful failure to enforce the FHA, as is the situation with CBP in this case.

As did HOME, IRAdvocates had to "devote significant resources to identify and counteract" the unlawful actions of the defendant, in this case CBP. *See Havens*, 455 U.S. at 379. The injury to IRAdvocates was "more than simply a setback to the organization's abstract social interests" because IRAdvocates was performing a core business function of using litigation to free child slaves. *See id*. at 379. "[T]here can be no question" that the drain and diversion of IRAdvocates' resources, because of CBP's unlawful failure to enforce Section 307, constituted a "concrete and demonstrable injury to the organization's activities." *Id*.

CBP cites two out-of-Circuit, post-*Alliance* cases, claiming that a diversion of resources caused by a defendant's unlawful action can no longer suffice to establish a concrete injury. DA Br. at 18-19 (citing *Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165 (9th Cir. 2024), and *Fair Hous. Ctr. Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990 (6th Cir. 2025)). The cases say nothing of the sort. Diversion of resources remains a basis of an injury-in-fact, so long as those resources were diverted in response to an impairment of the organization's core

business activity. Because IRAdvocates has sufficiently alleged that CBP's unlawful failure to act on IRAdvocates' Petition perceptibly impaired its core business by depriving it of a major litigation tool to stop child slavery, the diversion of resources it suffered in response to CBP's failure to enforce Section 307 constitutes an injury-in-fact.

In *Arizona Alliance*, the Ninth Circuit interpreted *Alliance*'s "core business activity" rule as requiring the plaintiff to "show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action" in order to use a diversion-of-resources theory of standing. 117 F.4th at 1170 (emphasis in original); *see Alliance*, 602 U.S. at 395-96. IRAdvocates has made this showing. The injury is the deprivation of a right created by the statutory and regulatory scheme created by Section 307 and 19 C.F.R. § 12.42. This scheme confers a right on "[a]ny person outside the CBP" to petition for the ban of goods suspected to violate Section 307. 19 C.F.R § 12.42(b). Furthermore, if the information in the petition "reasonably but not conclusively indicates that merchandise within the purview of section 307 is being, or is likely to be, imported," the CBP has a legal duty to withhold release of the goods in question. *Id.* at § 12.42(e). By failing to make a good faith investigation into IRAdvocates' Petition—illustrated by CBP declaring the Petition untimely, as a result of CBP's *own* unreasonable delay—CBP has

violated its legal duty to IRAdvocates to investigate and act on its Petition in good faith and in accordance with 19 C.F.R. § 12.42.

By contrast, in *Arizona Alliance*, the alleged injury did not stem from the defendants' legal duty to the plaintiffs. *Arizona Alliance* involved three non-profit organizations challenging an election law that provided for canceling the voter registrations of individuals who move to a new county. 117 F.4th at 1169. The plaintiffs argued that the cancellation law created a risk that voters with up-to-date registration would have their registrations wrongfully canceled; this risk frustrated their mission of encouraging minority voter-registration. *Id.* at 1178. But this risk was not an injury to the plaintiffs themselves. The plaintiffs, as organizations, obviously were not registered voters at risk of being expunged from the voter rolls. And the plaintiffs had no legal right to not have the voter registrations of other people canceled. The challenged law thus did not threaten any legal right that belonged to the plaintiffs themselves.

But in the present case, CBP has violated IRAdvocates' right to have its Petition fairly investigated and acted upon in accordance with the law. This alone is a direct injury to IRAdvocates' "pre-existing core activities" that is "apart from [IRAdvocates'] response to that governmental action," and thus satisfies the Ninth Circuit standard. *See Arizona Alliance*, 117 F.4th at 1170.

*Fair Housing* similarly does not foreclose an injury-in-fact in this case. In *Fair Housing*, the Sixth Circuit noted that "expenditure of resources in opposition to a defendant's actions, *standing alone*, is insufficient to establish standing under *Havens*." 124 F.4th 990, 992 (emphasis added). "There must be something more—the court must find that the organization has alleged and shown that the conduct challenged in the suit interfered with the organization's 'core business activities.'" *Id.* at 992-93 (quoting *Alliance*, 602 U.S. at 395). But requiring "something more" does **not** mean that there is no concrete injury whenever a plaintiff diverts its resources in opposition to the defendant's action. After all, that is exactly what HOME sought damages for in *Havens*: having to "devote significant resources to identify and counteract the defendant's" unlawful conduct. 455 U.S. at 379. HOME's resource-expenditure was not a stand-alone injury. Havens Realty's lies about housing availability "violated HOME's right to truthful information under the Fair Housing Act." *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 904 (6th Cir. 2024); *see Havens*, 455 U.S. at 368. Therefore, Havens Realty violated its legal duty to not discriminate against HOME's employees, and HOME diverted its resources in response to a violation of a legally protected right.

Just as Havens Realty had a legal duty to not discriminate against HOME's employees, CBP has a legal duty to engage with IRAdvocates' Petition as

prescribed by Section 307 and 19 C.F.R § 12.42—which it has failed to do.[4] This failure has not simply frustrated IRAdvocates' mission or goals in an abstract sense. To the contrary, it has interfered in a concrete way with IRAdvocates' core business activity of using the available legal mechanisms to stop imports of cocoa made with forced labor by specific chocolate companies, and it has forced IRAdvocates to expend its limited resources on trying to compel CBP to perform its legal duty to IRAdvocates. This is more than sufficient to create an injury-in-fact.

As *Alliance* made clear, *Havens* remains good law, and the diversion-of-resources injury caused by CBP's unlawful action applies directly to this case. *See* 602 U.S. at 395-96.

**B.** **IRAdvocates' Injury Was Caused By CBP's Failure to Act on the Petition as Required by Section 307.**

As IRAdvocates established in its Opening Brief at 43-45, the element of traceability is easily established in this case because CBP's unlawful refusal to enforce Section 307 directly caused IRAdvocates' injuries: the loss of Section 307,

---

[4] For this reason, IRAdvocates is not merely suing "based only on an 'asserted right to have the Government act in accordance with law" *See* DA Br. at 19-20 (quoting *Alliance*, 602 U.S. at 381). And even if CBP disagrees with IRAdvocates' interpretation of the rights and duties created by Section 307 and 19 C.F.R. § 12.42, that disagreement is wholly irrelevant for standing purposes because the merits of IRAdvocates' position must be accepted as true. *See, e.g.*, *Warth*, 422 U.S. at 501-02; *Apple,* 96 F.4th at 409-10; *Attias*, 865 F.3d at 629.

established by Congress to be a major tool to fight child slavery, and the expenditure of major time and resources to counteract CBP's failure to fulfill its legal duty to IRAdvocates. Again, applying the well-established legal principle that CBP has failed to acknowledge, assuming the merits of IRAdvocates' underlying claim in assessing standing, *see, e.g.*, *Warth*, 422 U.S. at 501-02, CBP's failure to take mandatory action in response to IRAdvocates' Petition was unlawful, and IRAdvocates' injuries flow directly from that unlawful conduct.

CBP's response hinges entirely on denying that IRAdvocates suffered a cognizable injury. *See* DA Br. at 23. It is certainly true that if IRAdvocates suffered no injury at all, it would lack standing both because of a lack of injury and a failure of causation. However, as IRAdvocates has established in Section II.A, *supra*, and in its Opening Brief, it did suffer significant concrete injuries solely attributable to CBP's unlawful actions. *See* Op. Br. at 31-33 (listing costly steps IRAdvocates took in an effort to pressure CBP to take legally required action in response to IRAdvocates' Petition); Appx82-84 (Complaint ¶¶ 106-114). The Complaint describes in detail the resources IRAdvocates diverted for the sole purpose of encouraging CBP to decide on its Petition, as CBP is required to by law. Appx82-84 (Complaint ¶¶ 106-114). Taking IRAdvocates' allegations as true, and assuming the merits of IRAdvocates' underlying claim that CBP acted unlawfully by treating Section 307 as purely discretionary, traceability is clearly

established under the traditional test established in *Lujan v. Defenders of Wildlife,*

504 U.S. 555, 560-61 (1992).

## C.  IRAdvocates' Injuries Would Be Redressed by the CIT's Order for CBP to Enforce Section 307.

IRAdvocates provided a detailed analysis establishing that its injuries would

be redressed by an order from the CIT requiring CBP to make a decision regarding

IRAdvocates' Petition. Op. Br. at 45-54. CBP's response does little to raise a

serious question of whether an order for CBP to act under Section 307 would

redress IRAdvocates' injuries. *See* DA Br. at 23-26. Fundamentally, CBP's

position is tainted by its mischaracterization of the relief sought by IRAdvocates.

*See* DA Br. at 24-25. As noted at pages 1-2, *supra*, IRAdvocates is not seeking a

WRO, but instead specifically requested in its Complaint that CBP simply comply

with its "statutory duty to make a decision within the scope of [its] statutory

authority. [CBP does] not have the power to simply ignore a federal law passed by

Congress." Appx89 (Complaint ¶ V.B).

CBP doubts whether the relief IRAdvocates requested in its Complaint—a

decision by CBP as to whether to grant a WRO in response to IRAdvocates'

Petition—would satisfy IRAdvocates. DA Br. at 24-25. CBP's doubt is irrelevant

in light of the express language of the Complaint. Obtaining the specific relief

sought in a complaint is the very essence of redressability. The key issue in this

case is that CBP's position that Section 307 is purely discretionary and creates no

21

legal duty for CBP to act in response to a petition, *see* ECF No. 16, at 3-4, 18, 22-29, is wrong as a matter of law.

While the merits of IRAdvocates' position must be assumed for purposes of assessing standing, it is worth noting that CBP's extremely restrictive reading of Section 307 is not entitled to deference from the Court. The Supreme Court in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 413 (2024), recently overruled the *Chevron* doctrine, and made clear that it is the function of the judiciary, not the implementing agency, to interpret the scope of laws of Congress: "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. ***But courts need not and under the APA may not defer to an agency interpretation of the law*** simply because a statute is ambiguous." *Id*. at 412–13 (emphasis added).

With CBP failing to take any action on the Petition, IRAdvocates and the child slaves harvesting cocoa for major multinational chocolate companies, whose interests IRAdvocates represents, are frozen in legal limbo. At a minimum, CBP is required to make a decision, any decision, on a lawful Petition, including that

which IRAdvocates submitted. The APA specifically requires that CBP provide "[p]rompt notice . . . of the denial in whole or in part of a written . . . petition." 5 U.S.C. § 555(e). IRAdvocates has never received such notice, and ordering CBP to provide it would definitively establish that the enforceability of Section 307 is not subject to CBP's total discretion.[5]

Further, if CBP is ordered to issue a prompt decision, as the law requires, even if it denies the Petition, this would require CBP to articulate standards for a meritorious Petition that IRAdvocates, and others, could then endeavor to meet. It would also allow IRAdvocates to appeal that decision under 5 U.S.C. § 706(2)(A) as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Given the strong evidence of forced child labor in cocoa harvesting and CBP's bad faith in sitting on this evidence for years, only to declare it "dated," such an appeal should be successful. *See* Op. Br. at 12-13. CBP's decision to do nothing effectively denies IRAdvocates of its statutory right to appeal. Thus, regardless of CBP's doubts about whether a decision ordering it to enforce Section 307 would satisfy IRAdvocates and redress its injuries, the record is clear that

---

[5] CBP claims with no evidence in the record that IRAdvocates' Petition is still "pending." DA Br. at 19. Even if this is true, given that the Petition was submitted on February 14, 2020, Appx23 (Complaint ¶ 4), then five years later with no action taken would clearly constitute unreasonable delay under Section 706(1) of the APA. The proper relief would still be, as IRAdvocates requested in its Complaint, an order from the CIT that CBP make a decision on the long-pending Petition.

IRAdvocates has been fighting to establish that, win or lose, Section 307 is a mandatory statute and CBP is not free to treat it as a discretionary Act of Congress.

To be clear, for the reasons previously provided, *see* Op. Br. at 47-53, IRAdvocates believes that its meritorious Petition, and the supplements providing substantial new evidence of child slavery in cocoa harvesting, should be granted and a WRO issued. But that is not required for its Complaint to be redressed. While an order for CBP to decide on the Petition would likely result in a WRO being issued, even a decision by CBP that the Petition does not reasonably indicate that certain cocoa imports were made with forced child labor would free this case from what is now a five-year legal limbo and allow IRAdvocates to challenge this decision with an appeal. Allowing CBP to take no action whatsoever in response to a Section 307 petition would effectively repeal Section 307 and improperly prevent activation of judicial review under the APA. CBP's abuse of power in this case is a textbook example of the need for protection provided by the APA.

## III.   CONCLUSION

IRAdvocates established in its Opening Brief that it has standing to challenge CBP's unlawful failure to take required action to enforce Section 307. CBP's repetitive assertion that IRAdvocates suffered no injuries ignores the fundamental rule that the merits of the underlying claim must be assumed in assessing standing. Doing so establishes that CBP's failure to enforce Section 307

and decide the merits of IRAdvocates' Petition was unlawful, and this caused significant injuries to IRAdvocates.

IRAdvocates has standing to sue CBP for failing to act under Section 307 on IRAdvocates' well-documented and timely Petition demonstrating that cocoa imported from Ivory Coast was produced "in whole or in part" with forced child labor. The CIT's erroneous denial of standing must be reversed.

Respectfully submitted on this 13th day of March 2025,


Terrence P. Collingsworth
(D.C. Bar No. 471830)
Executive Director
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue NE
Washington, D.C. 20002
Phone: (202) 543-5811
Email: tc@iradvocates.org

**Counsel for Plaintiff-Appellant**

**CERTIFICATE OF COMPLIANCE FOR
PLAINTIFF-APPELLANT'S REPLY BRIEF**

Pursuant to Federal Circuit Rule 32(b)(1), I certify that Plaintiff-Appellant's Reply Brief complies with applicable page and word limits in that it has a text typeface of 14 points and contains 5,994 words, fewer than the 7,000 words permitted.

Dated: March 13, 2025

Respectfully submitted:

/s/ Terrence P. Collingsworth
Terrence P. Collingsworth
(D.C. Bar No. 471830)
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue NE
Washington, D.C. 20002
Phone: (202) 543-5811
Email: tc@iradvocates.org

***Counsel for Plaintiff-Appellant***

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2025, I electronically filed the foregoing

with the United States Court of Appeals for the Federal Circuit by using the

CM/ECF system, which will send a notice of filing to all registered users,

including counsel for all parties.


Date: March 13, 2025           /s/ Terrence P. Collingsworth
                                      Terrence P. Collingsworth
                                      (D.C. Bar No. 471830)
                                      INTERNATIONAL RIGHTS ADVOCATES
                                      621 Maryland Avenue NE
                                      Washington, D.C. 20002
                                      Phone: (202) 543-5811
                                      Email: tc@iradvocates.org

                                      ***Counsel for Plaintiff-Appellant***